UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

DAM THIEU HUYNH,

    Petitioner,

v.

TODD BLANCHE, et al.,

    Respondents.

No. 1:26-CV-314-H

## ORDER

In March 2026, the Court issued an order denying Dam Thieu Huynh's petition for a writ of habeas corpus, concluding that, while his removal was "neither certain nor guaranteed," there was "a significant likelihood that he [would] be removed to Vietnam in the reasonably foreseeable future." *Huynh v. Noem*, No. 1:26-CV-006, 2026 WL 1188785 (N.D. Tex. Mar. 16, 2026) (quotation omitted). Several months later, with new counsel, Huynh again seeks habeas relief on largely the same grounds as before.

Huynh's claims fail. The abuse-of-the-writ doctrine prevents Huynh from relitigating his claims relating to his re-detention, as those were either already brought or could have been brought in his first petition. His likelihood-of-removal claim, to the extent it is not barred by the abuse-of-the-writ doctrine, fails on the merits. Accordingly, the petition (Dkt. No. 1) is denied.

### 1.    Background

Huynh's immigration history is discussed at length in the Court's prior order denying habeas relief. *Huynh*, 2026 WL 1188785, at *1. In short, Huynh entered the United States as a refugee, committed several crimes on U.S. soil, including an aggravated felony, and was ordered removed in 1998. *Id.*; Dkt. No. 1 ¶ 4. When removal efforts failed, the

government released Huynh on an Order of Supervision (OSUP). *Id.* In December 2025, ICE re-detained Huynh and placed him in custody at the Bluebonnet Detention Center in Anson, Texas in a second bid to remove him to Vietnam. *See* Dkt. No. 1 ¶ 8.

The following month, Huynh filed a habeas petition in this Court challenging his detention. *Huynh*, No. 1:26-CV-006, Dkt. No. 1. The petition raised two claims: that (1) the respondents detained him in violation of their own regulatory procedures, and (2) there was no significant likelihood of Huynh's removal, and his detention thus violated the Fifth Amendment and the INA. *Id.* ¶¶ 40–51.

The Court rejected the first petition. Relevant here, the Court concluded that, assuming the respondents had failed to comply with their own regulatory requirements, their failure was harmless or else not actionable in habeas. *Huynh*, 2026 WL 1188785, at *3–4. The Court also concluded that "[b]ecause circumstances have changed and there is now a significant likelihood that Huynh may be removed to Vietnam in the reasonably foreseeable future, the respondents did not violate the INA, its regulations, or the Fifth Amendment." *Id.* at *6–7.[1]

Months later, Huynh filed the instant petition with new counsel. *See* Dkt. No. 1. The new petition raises near-identical claims: that (1) Huynh's detention violates the INA

---

[1] At the time of the first petition, Huynh had been detained less than six months. Some courts within the Fifth Circuit categorically deny habeas relief under *Zadvydas* within the six-month period. *See Garcia Duarte v. DHS*, No. 1:25-CV-1895, 2026 WL 233854, at *1 (W.D. La. Jan. 12, 2026) (collecting cases). Other courts permit habeas relief if the petitioner can "prove that there is no significant likelihood of removal in the reasonably foreseeable future." *Puertas-Mendoza v. Bondi*, No. SA-25-CA-890, 2025 WL 3142089, at *2 (W.D. Tex. Oct. 22, 2025) (citation modified). Here, the Court disposed of Huynh's petition by concluding that, even at that early stage, Huynh's likelihood of removal in the reasonably foreseeable future was significantly likely. *See Huynh*, 2026 WL 1188785, at *6–7.

and the Fifth Amendment due to the lack of a significant likelihood of removal in the reasonably foreseeable future; (2) the respondents violated their own regulations and the APA in their re-detention process; and (3) his detention is punitive in violation of the Fifth Amendment. *Id.* ¶¶ 91–110. On July 2, 2026, the Court ordered the respondents to show cause why Huynh's writ should not be granted. Dkt. No. 3. On July 13, the respondents notified the Court that they intended to remove Huynh "to [Vietnam] within two weeks." Dkt. No. 7 at 1. However, the Vietnamese government requested additional information verifying Huynh's citizenship, so this did not come to pass. Dkt. No. 8-1 at 4. The government responded (Dkt. No. 8) and Huynh replied (Dkt. No. 9). The petition is ripe for review.

### 2.    Legal Standards

Ordinarily, the government must remove an alien within 90 days of the final order of removal or else release him subject to supervision. 8 U.S.C. § 1231(a)(3). However, Section 1231(a)(6) provides that certain aliens "may be detained beyond the removal period." In *Zadvydas v. Davis*, the Supreme Court interpreted Section 1231(a)(6) to determine how long the government may detain an alien pending removal under this Section. 533 U.S. 678, 682 (2001). The Court first determined that challenges to detainment under this provision are available under 28 U.S.C. § 2241, which is the basis of Huynh's habeas petition. *See id.* at 688; Dkt. No. 1 ¶ 29. Turning to the merits, the Supreme Court concluded that the government may not indefinitely detain aliens under this provision. *Zadvydas*, 533 U.S. at 699. Doing so would violate due process because such long-term detention requires "a criminal proceeding with adequate procedural protections." *Id.* at 690 (emphasis omitted). Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer

authorized by statute." *Id.* at 699. Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

A court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* Courts must also "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. After meeting this burden, the burden shifts to the respondents to provide evidence to rebut the alien's showing. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Federal regulations govern the issues in this habeas petition as well. 8 C.F.R. § 241.4(*l*)(2)(iii) gives the government discretion to end an OSUP "to enforce a removal order." Whether changed circumstances have arisen to permit removal is governed by 8 C.F.R. § 241.13. *See id.* § 241.4(b)(4). Section 241.13(a) "establishes special review

– 4 –

procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [Section] 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

### 3.    Analysis

Huynh's new petition assails both his re-detention process and his ongoing detention. Both of his claims fail—the former under the abuse-of-the-writ doctrine and the latter on the merits.

Start with Huynh's re-detention claims. In his original petition, Huynh urged that the respondents violated the *Accardi* doctrine in violating 8 C.F.R. § 241.13 and sought his release on those grounds. *Huynh*, No. 1:26-CV-006, Dkt. No. 1 ¶¶ 37–40, 48–51. The new petition likewise contends that the respondents violated Section 241.13 as well as Section 241.4. Dkt. No. 1 ¶¶ 20, 96–100, 105–110. Huynh also urges that the respondents detained him "to punish him and to otherwise send a message to similarly situated individuals that they must leave the United States to avoid a similar fate." *Id.* ¶ 104.

Habeas petitions under Section 2241 are governed by the abuse-of-the-writ doctrine. *See Beras v. Johnson*, 978 F.3d 246, 251–52 (5th Cir. 2020). The doctrine originates in the common law. *Id.* (citing *McCleskey v. Zant*, 499 U.S. 467, 483 (1991)). Historically, the "refusal to discharge on one writ was not a bar to the issuance of a new writ." *McCleskey*,

499 U.S. at 479 (citation modified). But beginning in the last century, the Supreme Court recognized that the availability of appellate review required modification of the old rule, given that the denial of habeas relief was originally beyond appellate review. *Id.* at 480–81. Under current doctrine, "there are two circumstances where a [Section] 2241 application should be dismissed as an abuse of the writ": (1) "by raising a claim in a subsequent petition that [the petitioner] could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice"; and (2) "rais[ing] the same claim a second time." *Beras*, 978 F.3d at 252 (collecting cases).

Huynh's claims fall into one or both categories. Portions of his challenge to Section 241.13 were raised in the last petition, and the Fifth Circuit "has said many times [that] subsequent [Section] 2241 applications are barred if the same legal issue is addressed and resolved in a prior application." *Id.* at 252 (citation modified). The remaining regulatory challenges, as well as his punitive-detention claim, could have been brought in January 2026 when he first sought habeas relief. Accordingly, all of Huynh's re-detention claims fail under the abuse-of-the-writ-doctrine.[2]

Next is Huynh's challenge to his likelihood of removal. While the Court declines to apply the abuse-of-the-writ doctrine here,[3] Huynh fails on the merits. Far from even attempting to distinguish his new petition from the old one, Huynh merely states that he

---

[2] The Court recognizes that one piece of evidence in Huynh's punitive-detention claim is a DHS press announcement from April 2026—after the Court denied habeas relief. Dkt. No. 1 ¶ 66. But much of his support from that contention comes from district-court decisions from 2025—prior to the filing of his original petition *Id.* ¶ 67.

[3] As the Supreme Court explained in *Zadvydas*, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701. Thus, detention after a certain period of time following the denial of a previous *Zadvydas* claim on the merits would not appear to preclude a later *Zadvydas* claim based on continued detention.

"cannot be deported to . . . Vietnam, because he does not have a valid travel document." Dkt. No. 1 ¶ 18.[4] As the Court explained in its earlier order, however, "[w]hat Vietnam does and does not require is a matter to which the Executive has better knowledge," and "Huynh's skepticism does not prevent the respondents from engaging in the immigration process to secure his removal." *Huynh*, 2026 WL 1188785, at *7. Because the respondents continue to do just that (*see* Dkt. No. 8-1 at 4–5), Huynh's mere skepticism is unpersuasive here. For these reasons, and for the reasons stated in the Court's prior order denying habeas relief, Huynh's likelihood-of-removal claim fails.

### 4.    Conclusion

The Court recognizes that Huynh's removal is not guaranteed. But the record here and as outlined in the Court's prior denial of habeas relief is clear: The respondents are actively working to secure his removal against a backdrop of rising deportation efforts to Vietnam. Huynh's remaining claims are barred by the abuse-of-the-writ doctrine. Accordingly, the petition (Dkt. No. 1) is denied.

So ordered on August 14 , 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[4] He later argues that the original petition does not control because of the failure to remove him on July 28. *See* Dkt. No. 9 at 7–9. But this is the same skepticism that failed to persuade the Court in *Huynh I.* The Court remains unpersuaded.